IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LAWRENCE ORTIZ,

      Plaintiff,

    vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,[1]

      Defendant.

No. CIV S-06-1519 DAD

<u>ORDER</u>

      This social security action was submitted to the court, without oral argument, for ruling on plaintiff's motion for summary judgment or remand and defendant's cross-motion for summary judgment. For the reasons explained below, the decision of the Commissioner of Social Security (Commissioner) is reversed and this matter is remanded with the direction to grant benefits.

**PROCEDURAL BACKGROUND**

      In January 2004, plaintiff Lawrence Ortiz, Jr. applied for Social Security Disability Insurance benefits under Title II of the Social Security Act (Act), alleging disability

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Mr. Astrue is substituted as defendant in this suit pursuant to 42 U.S.C. § 405(g) and Fed. R. Civ. P. 25(d)(1).

commencing on May 15, 2003.  (Transcript (Tr.) at 53-55.)  The Commissioner denied plaintiff's application initially and on reconsideration.  (Tr. at 35-36.)  On July 13, 2005, pursuant to plaintiff's request filed November 5, 2004, a hearing was held before an administrative law judge (ALJ), at which plaintiff was represented by current counsel.  (Tr. at 49, 233-47.)  Additional medical records were submitted after the hearing.  (Tr. at 196-204.)  In a partially favorable decision issued on September 15, 2005, the ALJ determined that plaintiff was disabled from May 15, 2003 through August 13, 2004, but not thereafter, due to medical improvement.  (Tr. at 16-30.)  The following findings were entered:

1. Mr. Ortiz meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. Mr. Ortiz has not engaged in substantial gainful activity since the alleged onset of disability.

3. Mr. Ortiz's medial and anterior horn lateral meniscal tears, Grades III and IV chondromalacia, and generalized synovitis, status-post arthroscopy; osteoarthritis of the knees, bilaterally; and hypertension are considered "severe" impairments, whereas his obesity is considered "non-severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds Mr. Ortiz's allegations for the period May 15, 2003 through August 13, 2004 are essentially credible, in that while he was recovering from surgery, he would have had to take frequent, unscheduled breaks.  However, as of August 14, 2004 his allegations of continuing limitation are less than fully credible for the reasons set forth in the body of the decision.

6. From May 15, 2003 through August 13, 2004 Mr. Ortiz was unable to perform sustained work at any exertional level while recovering from knee surgery.  However, by August 14, 2004 he regained the ability to perform at [sic] sedentary work with minimal postural limitations.

/////

      7.     Mr. Ortiz is unable to perform his past relevant work as a glazier, which required medium exertion (20 CFR § 404.1565).

      8.     Mr. Ortiz is a "younger individual" (20 CFR § 404.1563).

      9.     Mr. Ortiz has "more than a high school (or high school equivalent) education" (20 CFR § 404.1564).

    10.     Mr. Ortiz has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR § 404.1568).

    11.     From May 15, 2003 through August 13, 2004 Mr. Ortiz was unable to perform sustained work at any exertional level. However, as of August 14, 2004 he experienced sufficient medical improvement to perform a wide range of sedentary work (20 CFR § 404.1567)) [sic].

    12.     From May 15, 2003 through August 13, 2004 Mr. Ortiz would be disabled within the framework of the Medical Vocational Guidelines. However, as of August 14, 2004 and continuing through the date of this decision, based on an exertional capacity for sedentary work, and his age, education, and work experience, a finding of "not disabled" may be reached within the framework of Medical-Vocational Rule 201.28.

    13.     Mr. Ortiz's capacity for sedentary work since August 14, 2004 is substantially intact and has not been compromised by significant nonexertional limitations. Accordingly, using the above-cited Rule(s) as a framework for decision-making, Mr. Ortiz is "not disabled."

    14.     Mr. Ortiz was under a "disability" as defined in the Social Security Act, from May 15, 2003 through August 13, 2004. By August 14, 2004 he had experienced medical improvement, such that he was no longer under a "disability" from that date and continuing through the date of the decision (20 CFR § 404.1520(g)).

(Tr. at 29-30.)

        On September 19, 2005, plaintiff's counsel requested review of the ALJ's decision and further requested that the record be left open to submit updated medical records and a letter brief on plaintiff's behalf. (Tr. at 14-15.) New evidence was submitted by counsel with a letter dated February 2, 2006. (Tr. at 205-31.) The Appeals Council considered the new

evidence but denied plaintiff's request for review on May 26, 2006.  (Tr. at 4-7, 196-204.)  Plaintiff then sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on July 10, 2006.

## LEGAL STANDARD

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).  The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive.  See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Morgan, 169 F.3d at 599; Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion.  See Jones, 760 F.2d at 995.  The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920.  See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

> The five-step process can be summarized as follows:
>
> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Yuckert, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff seeks an order reversing the Commissioner's decision and granting immediate benefits on the ground that the decision was not supported by substantial evidence. In support of his motion, plaintiff argues that he has not experienced medical improvement in his orthopedic impairment and that the Commissioner did not meet his burden of producing evidence sufficient to rebut the presumption of continuing disability. If an immediate grant of benefits is not the appropriate remedy, plaintiff seeks reversal of the Commissioner's decision and remand for a rehearing. If the case is remanded for rehearing, plaintiff contends that testimony from a vocational expert is required because plaintiff is unable to perform his past relevant work and has significant nonexertional limitations. Plaintiff's arguments are addressed below.

### I. Whether There Was Medical Improvement in Plaintiff's Condition

If the Commissioner determines at step four of the sequential evaluation process that a claimant can no longer perform his past work, the burden shifts to the Commissioner at step five to show that the claimant has the residual functional capacity (RFC) to "make an adjustment to any other work that exists in the national economy." C.F.R. § 404.1545(a)(5)(ii). "Once a claimant has been found to be disabled, . . . a presumption of continuing disability arises in [his] favor [, and the Commissioner] bears the burden of producing evidence sufficient to rebut this presumption of continuing disability." Saltzman v. Apfel, 125 F. Supp. 2d 1014, 1019 (C.D. Cal. 2000) (quoting Bellamy v. Sec'y of Health & Human Serv., 755 F.2d 1380, 1381 (9th Cir. 1985); Murray v. Heckler, 722 F.2d 499, 500 (9th Cir. 1983); Iida v. Heckler, 705 F.2d 363, 365 (9th Cir. 1983)).

In order to decide whether a claimant's disability has continued, the Commissioner must determine if there has been any medical improvement in the claimant's impairments and, if so, whether this medical improvement is related to the claimant's ability to work. 20 C.F.R. § 404.1594(a). "A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the] impairment(s)." 20 C.F.R § 404.1594(b)(1). Even where medical improvement related to the claimant's ability to work has occurred, the Commissioner must show that the claimant is currently able to engage in substantial gainful activity before finding that the claimant is no longer disabled. 20 C.F.R. § 404.1594(a).

In the present case, the ALJ found that plaintiff's severe impairments include "chronic left knee pain residual to medial and anterior horn lateral meniscal tears, Grades III and IV chondromalacia, and generalized synovitis, status-post arthroscopy; osteoarthritis of the knees, bilaterally; and hypertension," all of which "can impose significant vocationally relevant limitations." (Tr. at 21.) The ALJ determined that plaintiff had been unable to perform sustained work at any exertional level from May 15, 2003, which was the date of his injury, through

August 13, 2004, while he prepared for, and recovered from, left knee surgery. (Tr. at 28.) The ALJ observed that "[t]he pain and lower extremity limitation associated with the recovery process, would have prevented [plaintiff] from performing even the minimal standing and walking requirements of sedentary work." (Tr. at 21.) The ALJ found it "reasonable that during the recovery period, [plaintiff] had to take frequent, unscheduled breaks to lie down and elevate his leg, and thus would have been unable to perform work on a regular and continuous basis of 8 hours per day, 5 days per week or an equivalent schedule." (Tr. at 21.) The ALJ concluded, however, that as of August 14, 2004, and continuing through the September 15, 2005 date of the ALJ's written decision, plaintiff had "recovered sufficiently to perform a wide range of sedentary exertional work activity." (Tr. at 21.)

The ALJ's findings of medical improvement and ability to engage in substantial gainful activity as of August 14, 2004, are based on the orthopedic consultative evaluation performed by Philip Wirganowicz, an orthopedic surgeon, on August 14, 2004, at the request of the Department of Social Services (DSS). (Tr. at 23-27, 158-64.) Dr. Wirganowicz concluded that plaintiff should be able to lift 10 pounds frequently or 25 pounds occasionally, should be able to stand or walk for approximately 4 hours in a normal workday with appropriate breaks, should be able to sit for unlimited durations, could use his upper extremities in an unrestricted fashion, and was likely to require the use of a cane on only a part-time basis. (Tr. at 24, 162.)

Due to the lack of treating records from April 27, 2004, to August 14, 2004, and plaintiff's indication to Dr. Wirganowicz that he was not taking pain medication, the ALJ discounted plaintiff's statements about suffering from constant pain since re-injury to his knee in April 2004, receiving minimal benefit from physical therapy, and needing to use a cane full-time. (Tr. at 23-24.) The ALJ inferred that plaintiff sought further medical treatment only because disability benefits were denied after reconsideration in September 2004. (Tr. at 24.) The ALJ also noted that his finding of medical improvement as of August 14, 2004, was consistent with the opinions of two DSS medical consultants who had projected on March 18, 2004, and

7

confirmed after reconsideration on September 7, 2004, that plaintiff should be able to perform a wide range of light work within a year after his December 24, 2003 surgery. (Tr. at 24, 165-76.)

The court finds that the ALJ's finding of medical improvement is not based on substantial evidence of an actual decrease in medical severity based on improvement in the symptoms, signs and/or laboratory findings associated with plaintiff's impairments. As defined by the applicable regulations, "symptoms" are the claimant's own statements describing his impairment; "signs" are anatomical, physiological, or psychological abnormalities which can be observed and shown by medically acceptable clinical diagnostic techniques; and "laboratory findings" are anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques. 20 C.F.R. § 404.1528.

Here, plaintiff's own statements concerning his orthopedic impairments as of August 14, 2004 were as follows: he had been unable to work since he injured his left knee at work on May 15, 2003; as a result of continued pain in the left knee, he eventually underwent arthroscopy of the left knee and debridement of a torn meniscus on December 24, 2003; postoperatively, there was some improvement in his knee symptoms; in April 2004 he twisted his left knee while trying to warn neighbors of a fire in his apartment complex; he had been in constant pain since the April 2004 re-injury to his left knee; the pain was worse with walking and bending; his left knee frequently gave way; he continued in physical therapy with minimal improvement; he needed to use a cane on a full-time basis; he was not taking medications for pain; he suffered excruciating pain with any movement of his left knee and even very light touch. (Tr. at 158.) Plaintiff's symptoms on August 14, 2004, did not reflect medical improvement and did not establish his ability to engage in substantial gainful activity as of that date.

Similarly, the signs associated with plaintiff's orthopedic impairments as of August 14, 2004, do not provide substantial evidence of an actual decrease in medical severity. Dr. Wirganowicz conducted a physical examination of plaintiff on that date and made the following findings: when plaintiff's gait was tested without the use of a cane, he walked with a

8

very awkward limp involving the left leg with the knee held in a flexed position; range of motion of the left knee was extremely difficult to assess since any movement caused excruciating pain; passive range of motion of the left knee was 10-80 degrees; moderate joint effusion was present in the left knee; there was tenderness over the medial aspect of the left knee even to very light touch; no crepitation or muscular atrophy of the left knee joint was noted; the skin of the left knee was of normal temperature, and no erythema was noted; motor strength of the hamstrings and quadriceps was difficult to assess secondary to stated pain; there was giving way with motor strength testing. (Tr. at 161.) Dr. Wirganowicz concluded that plaintiff had undergone arthroscopy and presumed meniscal debridement of the left knee "without benefit" and that plaintiff continued to have limited range of motion about the left knee as well as a moderate joint effusion. (Tr. at 162.)

As reflected in Dr. Wirganowicz's report and in the record before the ALJ, the signs and laboratory findings of plaintiff's orthopedic impairments as of August 14, 2004, were little changed from the signs and laboratory findings recorded in March and April 2004 by Dr. Cameto, plaintiff's treating surgeon. When plaintiff was seen on March 16, 2004, his left knee range of motion had improved to 5-100 degrees but was experiencing ongoing left knee pain, and a bone scan appeared to be positive for arthrosis and synovitis. (Tr. at 23, 159.) When plaintiff was seen by Dr. Cameto on April 27, 2004, after re-injuring his knee, left knee range of motion was 10-70 degrees with a painful 2+ effusion, and plaintiff was using a cane. (Tr. at 23, 159.) Dr. Cameto advised plaintiff to rest, apply ice, elevate his left knee, and use crutches rather than a cane. (Tr. at 23, 111.) If plaintiff's symptoms persisted, Dr. Cameto intended to obtain follow-up MRI scans and consider a repeat arthroscopy. (Tr. at 23, 111.) Examining plaintiff on August 14, 2004, Dr. Wirganowicz found moderate joint effusion, with tenderness over the medial aspect of the knee even to a very light touch, and left knee passive range of motion of 10-80 degrees. (Tr. at 161.)

/////

At the administrative hearing conducted on July 13, 2005, plaintiff explained that his insurance ran out and he turned to state clinics for medical treatment. (Tr. at 238.) He was told by various physicians at the clinics that there was no treatment they could give him except to prescribe drugs and refer him to an orthopedic specialist. (Tr. at 238, 244.) At the time of the hearing, plaintiff had an appointment with an orthopedic specialist at U.C. Davis Medical Center on September 2, 2005, which was the earliest appointment he could get. (Tr. at 241.) Plaintiff stated that he was reluctant to take pain medications because his brother "passed away taking drugs," and he found that the pain medications caused "fogginess" that made it hard to clear his head. (Tr. at 244-45.) Plaintiff stated that he had been taking Vicodin and similar medications for pain two or three times a week since his injury in May 2003, using the medications only "when it gets really bad." (Tr. at 238, 245.) Plaintiff estimated that the pain medication "would take about maybe 50-percent of it away." (Tr. at 239.) Plaintiff reported that elevating his left leg helped reduce the pain and he tried to elevate the leg as much as possible, for as long as eight hours straight when he could. (Tr. at 242.)

The record before the ALJ included medical records from covering the period from September 29, 2004, to May 10, 2005. (Tr. at 177-95.) The ALJ acknowledged that plaintiff sought treatment on October 1, 2004, after having fallen on both knees a few weeks prior to that date. (Tr. at 24.) Plaintiff's left knee was found to be moderately tender with 2+ effusion and flexion of only 30 degrees, while his right knee had no effusion but flexion to only 90 degrees. (Tr. at 24, 194.) A radiology report dated November 1, 2004, reflects, with regard to the right knee, mild narrowing of the medial joint compartment, very mild spurring to the posterior margin of the patella and anterior margin of the medial femoral condyle, and slight lateral subluxation of the patella. (Tr. at 24, 193.) With regard to the left knee, the report reflected medial joint compartment narrowing, more prominent than on the right side, hypertrophic spurring about the medial compartment, and degenerative changes to the patellofemoral joint on the left side. (Tr. at 24, 193.) On December 1, 2004, a physician

reviewed the radiology report and assessed plaintiff as permanently partially disabled from manual labor. (Tr. at 24, 187.) On March 9, 2005, a physician found plaintiff's symptoms subjectively worse and referred him to orthopedics. (Tr. at 24, 181.) Plaintiff was scheduled to see a specialist on September 2, 2005. (Tr. at 241.) Plaintiff was prescribed Vicodin for pain during this period of time. (Tr. at 182, 188.)

The record before the ALJ at the time of his written decision does not support findings of medical improvement as of August 14, 2004. The symptoms, signs, and/or laboratory findings associated with plaintiff's orthopedic impairments had improved, if at all, only marginally and temporarily. The same conditions that led the ALJ to find plaintiff unable to perform sustained work at any exertional level while he prepared for, and recovered from, left knee surgery were still present on August 14, 2004. The ALJ had observed that "[t]he pain and lower extremity limitation associated with the recovery process, would have prevented [plaintiff] from performing even the minimal standing and walking requirements of sedentary work" and had found it "reasonable that during the recovery period, [plaintiff] had to take frequent, unscheduled breaks to lie down and elevate his leg, and thus would have been unable to perform work on a regular and continuous basis of 8 hours per day, 5 days per week or an equivalent schedule." (Tr. at 28.) The medical evidence and testimony before the ALJ on September 15, 2005, demonstrated that plaintiff continued to suffer pain and lower extremity limitation that would prevent him from performing the minimal standing and walking requirements of sedentary work and that plaintiff still required frequent, unscheduled breaks to lie down and elevate his leg, which would prevent him from performing work on a regular and continuous basis. The ALJ found medical improvement by improperly discounting some of Dr. Wirganowicz's findings and plaintiff's statements about constant pain, minimal benefit from physical therapy, and need for a cane.

The ALJ issued his written decision prior to receipt of the medical records related to plaintiff's September 2, 2005 appointment with an orthopedic specialist. Plaintiff's counsel

appealed the ALJ's partially favorable decision and requested that the record be left open for 45 days to submit updated orthopedic treatment records. (Tr. at 15.) Pursuant to extensions of time, counsel submitted additional medical records. (Tr. at 205-09.) The Appeals Council did not discuss the new records presented by plaintiff but merely concluded that the new evidence "does not provide any additional clinical or laboratory records which would warrant a change in the Administrative Law Judge's decision." (Tr. at 5.)

The court has considered the new evidence and finds that the records confirm the continuing nature of plaintiff's disability. John Meehan, M.D., examined plaintiff on September 2, 2005, and made the following findings: plaintiff walked with crutches with a slow antalgic gait; his left knee had a 2+ to 3+ effusion; he had diffuse tenderness as well as tenderness to light touch in the peripatellar region; his knee had a guarded range of motion although the knee could come to full extension and could be flexed up to 100+ degrees. (Tr. at 209.) X-rays performed on September 2, 2005, were compared to previous x-rays, revealing medial joint space narrowing with small osteophyte sclerosis in medial compartments. (Tr. at 209.) On the basis of these findings, Dr. Meehan recorded an impression of persistent knee pain, status post left knee arthroscopy in 2003, and was unable to rule out either loose bodies that remained in the knee or regional pain syndrome. Dr. Meehan could not explain plaintiff's "pretty symptomatic knee, as well as effusion," but thought it worthwhile to perform a repeat arthroscopy because he suspected "osteochondral loose bodies that are persistent in his knees causing some inflammatory issues." Surgery was to be scheduled for January 2006. (Tr. at 209.) The radiologist's report dated September 2, 2005, noted moderate to severe osteoarthritis involving the medial compartment of the left knee and moderate to severe osteoarthritis involving the periphery of the medial compartment of the right knee. (Tr. at 213-14.) These clinical and laboratory findings do not support the ALJ's findings of medical improvement and ability to engage in substantial gainful activity as of August 14, 2004.

/////

1    The court finds that, after finding plaintiff disabled as of May 15, 2003, the
Commissioner failed to provide substantial evidence of medical improvement as of August 14,
2004.  "Benefits wrongfully terminated should be reinstated without further agency proceedings."
<u>Iida</u>, 705 F.2d at 365.  Accordingly, the Commissioner's decision will be reversed and plaintiff's
benefits will be reinstated as of August 14, 2004.

**II.   Whether Testimony of a Vocational Expert Was Required**

Evidence sufficient to rebut the presumption of continuing disability must be
produced before the Commissioner can even consider the medical-vocational guidelines.
<u>Bellamy</u>, 755 F.2d at 1381 (citing <u>Perry v. Heckler</u>, 722 F.2d 461 (9th Cir. 1983)).  In light of the
Commissioner's failure to produce substantial evidence of medical improvement with regard to
plaintiff's orthopedic impairments, it is unnecessary to reach plaintiff's second argument.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is granted;

2. Defendant's cross-motion for summary judgment is denied;

3. The Commissioner's decision to terminate plaintiff's disability benefits as of August 14, 2004, is reversed; and

4. This matter is remanded for an award of benefits commencing August 14, 2004.

DATED: September 10, 2007.

_/s/ Dale A. Drozd_
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1/orders.socsec/ortiz1519.order

13